IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| INT'L BROTHERHOOD OF TEAMSTERS LOCAL UNION NO. 413, | : : |
| Plaintiff, | : Case No. 2:19-cv-3513 : |
| v. | : Chief Judge Algenon L. Marbley : |
| THE KROGER CO. d/b/a TAMARACK FARMS DAIRY, | : Chief Magistrate Judge Deavers : : |
| Defendant. | : |

**OPINION & ORDER**

This matter is before the Court on Cross-Motions for Summary Judgment: Defendant's Motion for Summary Judgment (ECF No. 21) and Plaintiff's Motion for Summary Judgment (ECF No. 22). For the reasons set forth below, the Court **DENIES** Defendant's Motion and **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion.

**I.     BACKGROUND**

**A.     Factual Background**

This case concerns a dispute over retirement benefits between Plaintiff International Brotherhood of Teamsters Local Union No. 413 ("the Union") and Defendant The Kroger Co. d/b/a Tamarack Farms Dairy. Kroger sponsors one defined benefit plan for its employees, the consolidated retirement benefit plan (CRBP) "spin-off plan," and also sponsors other defined benefit retirement plans through unions. (ECF No. 17, 11:9–11:25). Kroger also offers multiple other retirement plans. (*Id.*, 11:9–11:11).

During the relevant time period, the Union and Tamarack were parties to a collective bargaining agreement ("CBA"), which covers the period of October 8, 2017 through October 10,

1

2020. (ECF No. 22-2, Ex. A). Article 5 of the CBA sets forth the grievance and arbitration procedure to be used in the case of a grievance, defined by the CBA as "a dispute between the Employer and employee as to the interpretation or application of any provisions of this Agreement and is limited to the express terms and provisions of this Agreement." (*Id.* § 5.1). Union employees with grievances must pursue a multi-step process to settle disputes concerning the CBA. (*Id.*). Two conferences between the aggrieved Union employee and Tamarack must take place before a matter may be referred to the Board of Arbitration. (*Id.*). A decision by the arbitrator "shall be final and binding" and the arbitrator is not "empowered to alter the terms" of the CBA. (*Id.*).

The CBA also includes several provisions concerning benefits, such as vacation time, life insurance, and, most relevant to the matter here, retirement. Article 19, Section 19.1 instructs that "All employees of the Employer will be covered by and participate in the Kroger Employees Retirement Benefit Plan. Participation is governed by the terms of the Plan." (*Id.* § 19.1). The language of Article 19, Section 19.1 has remained the same since as early as 2001. (ECF No. 19, 30:4–30:23). Kroger's Manager of Defined Benefit Plans testified that she had no knowledge of a plan currently offered under the name "Kroger Employees Retirement Benefit Plan," as referenced in Article 19, Section 19.1. (ECF No. 17, 13:4 –14:2). Beginning in 2001, Kroger provided benefits via the Kroger consolidated retirement benefit plan or "CRBP," a defined benefit plan with multiple pension plans within it. (*Id.*, 15:8–16:5).

In August 2017, the CRBP was terminated and replaced by the "CRBP spin-off plan." (ECF No. 17, 16:6–16:23). At this time, approximately 30,000 nonunion associates were terminated from the plan and given the option to take a lumpsum payout of their benefit, roll the funds over to a 401(k) account, or have Kroger purchase an annuity with an insurance company for the associate's benefit. (*Id.*, 17:14–17:24, 18:16–18:20). Approximately 5,000 associates with

2

grandfathered pensions (a mix of Union and non-Union employees), 3,000 Union employees participating in a cash benefit plan that was frozen, and 1,500 "term vest associates" remained in the CRBP spin-off plan. (*Id.*, 18:1–19:14).[1] Those employees remaining in the CRBP spin-off plan, including Union employees in the cash benefit plan, did not receive any distribution options. (*Id.*, 21:1–22:8, 38:22–39:17).

Prior to the adoption of the CBA, Tamarack and the Union engaged in contract negotiations. One item of discussion during the negotiations was the issue of the "cash balance plan." (ECF No. 19, 15:3–15:17; ECF No. 18, 13:11–14:5). During the negotiations, Union representation sought for those in the cash benefit plan to have the same distribution options as management. (ECF No. 18, 14:2–14:8). The Union made a verbal proposal that participants in the cash balance plan should be able to do the same as management with their money. (*Id.*, 17:18–17:24). Union Steward Jay Laymon, who participated in the negotiations of the current CBA and past CBAs, indicated that he asks for updated copies of the retirement plan during each round of negotiations and that, historically, the plan the Union was being offered was the same plan as management. (*Id.*, 24:23–25:8). Mr. Laymon also testifies that, in his experience negotiating CBAs, management informed the Union that the benefits would be the same whenever the Union raised the issue of retirement. (*Id.*, 26:2–26:13). Tamarack informed the Union that there was no way to resolve this proposal prior to a vote on the current CBA. (*Id.*, 17:25–18:8, 27:13–27:19, 30:6–30:17). Mr. Laymon recalls that Tamarack made representations during negotiations that it would be able to resolve the cash balance payment issue raised in negotiations within three to six months. (*Id.*, 35:23–36:23).

On February 20, 2018, Mr. Laymon submitted Grievance Form 52672. (ECF No. 22-2, Ex.

---

[1] The CRBP spin-off plan includes approximately 25,000 participants total, of which approximately 14,000 are retired participants. (ECF No. 17, 31:18–32:3).

B; ECF No. 18, 5:13–5:24, 21:14–22:17).[2] On the Grievance Form, Mr. Laymon indicated that his grievance arises from Article 19, Section 19.1 (*Id.*). The grievance reads as follows:

> Based on (Article 19 Section 19.1) All Tamarack Bargaining Unit employees participating in the Kroger Consolidated Retirement Benefit Plan (aka Cash Balance Pension Plan) the Company will provide the same payment options as offered to management and non union hourly associates.

(*Id.*). Mr. Laymon testified that the plain language of the CBA does not support his grievance on its face, but that there could be different interpretations. (ECF No. 18, 32:20–33:21). Tamarack refused to hear the grievance. (ECF No. 19, 24:7–24:9). After proceeding through the required steps of the grievance procedure as required by the CBA, the Union notified Tamarack in September 2018 that the Union wished to arbitrate the grievance. (ECF No. 22-2 ¶ 8). The parties then engaged in a mediation process. (*Id.* ¶ 9). On or about January 3, 2019, the parties participated in a mediation session with a mediator from the Federal Mediation and Conciliation Service, which did not result in a resolution of the issue. (*Id.* ¶ 10). For several months, the parties exchanged information and proposals regarding the matter. (*Id.* ¶ 11).

In late June 2019, the Union indicated to Tamarack that it wished to proceed to arbitration of the grievance under Article 5 of the CBA. (*Id.*). On or about July 8, 2019, Defendant informed Plaintiff's counsel via e-mail that "the Company's position is that the dispute concerning the cash balance retirement plan is not arbitrable and the Company therefore does not agree to submit this matter to arbitration." (ECF No. 22-2, Ex. C).

### B. Procedural Background

In August 2019, the Union filed suit in federal court to compel arbitration of this dispute under the Labor Management Relations Act of 1947 ("LMRA"), codified at 29 U.S.C § 141 *et seq.*

---

[2] In the time period leading up to the grievance, contract negotiations between the Union and Tamarack were underway for the current CBA. (ECF No. 22-2 ¶ 13). The lack of distribution options for Union employees was raised during contract negotiations. (ECF No. 18, 13:11–14:15, 16:18–18:8, 34:3–34:14). A resolution was not reached.

(ECF No. 1 ¶¶ 4, 20–22). The Union alleged that Tamarack breached the CBA by refusing to arbitrate the grievance and that the failure to arbitrate was willful and in bad faith. (*Id.* ¶¶ 21–22). As relief, the Union seeks an order that Tamarack must arbitrate the grievance under the CBA, as well as costs, expenses, and attorney's fees. (*Id.* at 5).

On October 25, 2019, Defendant filed its Answer. (ECF No. 8). The Defendant admitted that it is a party to the CBA and contends that Article 19, Section 19.1 and Article 5 of the CBA "speak for themselves." (*Id.* ¶¶ 6–7, 11–12). Defendant also admitted that the parties attempted to mediate the dispute and that the parties discussed, but were unable to reach a resolution, as to the cash benefit plan. (*Id.* ¶¶ 16, 18). Kroger denied that the terms of the CBA provided for arbitration of the grievance. (*Id.* ¶ 19). Defendant then raised several defenses, including that Plaintiff's complaint fails to state a cause of action upon which relief may be granted. (*Id.* at 4).

The discovery period closed on August 17, 2020. (ECF No. 15). On September 11, 2020, the parties filed cross-motions for summary judgment. (ECF Nos. 21–22). The parties then filed responses and replies on the cross-motions for summary judgment. (ECF Nos. 26–29). The Motions for Summary Judgment are now ripe for decision.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in the non-moving party's favor. *U.S. Sec. & Exch. Comm'n v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citing *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). This Court then asks "whether 'the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986)). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. Evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249–50.

On a motion for summary judgment, the initial burden rests upon the movant to present the Court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there remains a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (finding that after the burden shifts, the nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury"). In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). Self-serving affidavits alone, however, are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Wash. Cnty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013). "The mere existence of a scintilla of evidence to support [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably

find for the [non-moving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Anderson*, 477 U.S. at 251.

The Court's standard of review does not change when the parties file cross-motions for summary judgment. *See Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) ("[T]he standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions."). Thus, in reviewing cross-motions for summary judgment, a court must still "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994).

### III. LAW & ANALYSIS

Any analysis of whether the grievance at the heart of this lawsuit is arbitrable must begin with the contractual agreement between the parties. Interpretation of a contract is a question of law, appropriate for resolution at the summary judgment stage. *See Exp.-Imp. Bank of U.S. v. Advanced Polymer Scis., Inc.*, 604 F.3d 242, 248 n.3 (6th Cir. 2010). Before a court may compel an unwilling party to arbitrate, the court "must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003); *see also United Steel Workers of Am. v. Cognis Corp.*, 2007 WL 1288212 (S.D. Ohio May 1, 2007) (explaining that parties must only arbitrate what they have contractually agreed upon). While the Federal Arbitration Act ("FAA") does not explicitly apply to collective bargaining agreements, federal courts may turn to the FAA for guidance in cases arising under Section 301 of the LMRA. *See Int'l Brotherhood of Teamsters, Local 519 v. United Parcel Serv., Inc.*, 335 F.3d 497, 503 n.2 (6th Cir. 2002); *see also Am. Fed'n*

*Television & Radio Artists v. WJBK-TV*, 164 F.3d 1004, 1009 (6th Cir. 1999) ("[T]he Supreme Court in *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 40 n.9 (1987), expressly recognized that federal courts may look to the FAA for guidance in labor arbitration cases.").

"American labor policy generally favors resolution of labor contract disputes by private, collectively bargained mechanisms." *Local 689 In'tl Union of Elec. Workers v. Hewitt Soap Co.*, 65 F. Supp. 2d 717, 719 (S.D. Ohio 1999) (citing LMRA and *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554 (1976)). Thus, any consideration of whether a dispute is arbitrable must "begin with the presumption that the national labor policy favors arbitration." *United Steelworkers of Am. v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 277 (6th Cir. 2007); *see also Detroit Coil Co. v. Int'l Ass'n of Machinists & Aerospace Workers, Lodge #82*, 594 F.2d 575, 578 (6th Cir. 1979) (explaining that arbitration is the favored mechanism to resolve labor disputes). The Supreme Court has instructed that "[i]n absence of any express provision excluding the particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where . . . the arbitration clause is quite broad." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584–85 (1960). "Doubts should be resolved in favor of coverage." *Id.* at 583.

The Sixth Circuit has also set forth the following guiding principles for lower courts analyzing arbitration clauses. First, no party may be forced to arbitrate any dispute "that it has not obligated itself by contract to submit to arbitration." *United Steelworkers of Am. v. Commonwealth Aluminum Corp.*, 162 F.3d 447, 451 (6th Cir. 1998) (quoting *United Steelworkers of Am. v. Mead Corp., Fine Paper Div.*, 21 F.3d 128, 131 (6th Cir. 1994)). Second, unless parties "clearly and unmistakably provide otherwise," it is within the province of a federal court to determine whether

8

the collective bargaining agreement creates a duty for parties to arbitrate a particular grievance. *Id.* Third, when considering arbitrability of a grievance, a court must not consider the merits of the underlying claim. *Id.* Fourth, where the CBA contains an arbitration clause, "the court should apply a presumption of arbitrability, resolve any doubts in favor of arbitration, and should not deny an order to arbitrate 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.*

### A.  Existence of a Valid Agreement to Arbitrate

There is no dispute between the parties that they are parties to a CBA and that they have agreed to arbitrate disputes "as to the interpretation or application of any provisions" under Article 5 of the CBA. (ECF No. 21 at 3; ECF No. 22 at 2). The parties do, however, dispute whether the grievance filed by Mr. Laymon "falls within the substantive scope of that agreement." *Javitch*, 315 F.3d at 624.

### B.  Applicability of Arbitration Clause to Specific Dispute

In determining whether a specific dispute will fall within the substantive scope of an arbitration clause, courts have emphasized that a broad arbitration clause makes the presumption of arbitrability especially relevant. The Supreme Court reached this conclusion when faced with an arbitration clause that encompassed "any differences arising with respect to the interpretation of this contract and the performances of any obligation hereunder." *AT&T v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). The Sixth Circuit has likewise applied this presumption when considering similarly broad arbitration clauses. *See Int'l Ass'n of Machinists & Aerospace Workers v. ISP Chems., Inc.*, 261 F. App'x 841, 843, 845 (6th Cir. 2008) (applying presumption to clause covering "any difference of opinion or dispute between representatives of the Company and Union representatives regarding interpretation or application of any provision"); *Cleveland Elec.*

9

*Illuminating Co. v. Util. Workers Union*, 440 F.3d 809, 814 (6th Cir. 2006) (applying presumption to clause covering "any disagreement concerning the interpretation or application of this [a]greement."); *Commonwealth Aluminum Corp.*, 162 F.3d at 448–49 (applying presumption to clause covering "matters involving the interpretation and application of all provisions of this Agreement"). This presumption will only be overcome where "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation." *AT&T*, 475 U.S. at 650 (quoting *Warrior & Gulf*, 363 U.S. at 582–83). Overcoming this presumption requires a showing of "an express provision excluding a particular grievance from arbitration" or "the most forceful evidence of a purpose to exclude the claim from arbitration." *Cleveland Elec.*, 440 F.3d at 814 (quoting in second part *Mead Corp.*, 21 F.3d at 131). Because the parties have not agreed to submit the arbitrability question to an arbitrator first, this Court will conduct an independent review of the arbitrability of the grievance. *Id.* at 812 (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)).

### 1.     Defendant's Motion for Summary Judgment

Both parties argue for summary judgment to be granted in their favor based on scope of the arbitration clause. Tamarack argues that summary judgment must be granted in its favor because the grievance is not arbitrable under the terms of the CBA. In support of its Motion, Defendant claims that the Union's grievance "has no basis in any language or terms of the CBA." (ECF No. 21 at 4). Tamarack contends that the Union's grievance concerning the cash benefit plan cannot arise under the terms of Article 19, Section 19.1 of the CBA and so there is there is no need for interpretation or application of the CBA to the grievance. (*Id.* at 5).

In its Response, the Union argues that there is an arbitrable dispute presented by the grievance because terms in Article 19, Section 19.1 are ambiguous or require further interpretation.

First, the Union suggests that the use of "all employees" in Article 19, Section 19.1 requires an arbitrator to interpret whether the decision to spin-off some employees into a new benefits plan violates the terms of the CBA. (ECF No. 27 at 3). Second, the Union argues that the reference to "Kroger Employees Retirement Benefit Plan" in this Section, which Kroger's Manager of Defined Benefit Plans testified does not presently exist, is another ambiguity requiring interpretation first by an arbitrator. (*Id.* at 3–4). The reference to this plan is a "latent ambiguity" and the Union contends that an arbitrator must consider extrinsic evidence, including parties' past practices, to resolve this ambiguity. (*Id.* at 4). Third, the Union also argues that the contract does not expressly exclude this grievance from arbitration. (*Id.* at 5–7). In support of this argument, the Union cites to Sixth Circuit decisions, as well as a decision by the Seventh Circuit wherein that court found that the failure to address a type of dispute in a CBA "is not necessarily an express exclusion." *See Karl Schmidt Unisia, Inc. v. United Auto. Workers of Am., UAW Local 2357*, 628 F.3d 909, 913 (7th Cir. 2010). Because the grievance implicates interpretation of Section 19.1 and is not expressly excluded from arbitration by the CBA, the Union argues that the merits of the grievance must be determined by the arbitrator.

The Defendant raises three arguments in its Reply. First, Tamarack argues that the Union cannot advance an argument that contradicts sworn deposition testimony. (ECF No. 28 at 2). In support of this assertion, Tamarack reproduces the deposition testimony of Mr. Laymon, wherein he testified that nothing in the express language of Article 19.1 appears to address the subject of the grievance. (*Id.*). Tamarack contends that the Union's argument about the ambiguity of "all employees" would expand the coverage of the CBA and directly contradicts Mr. Laymon's testimony. (*Id.* at 2–3). Second, Tamarack challenges the Union's arguments about the term "employee" on the basis that it directly contradicts another section of the CBA. Article 1 of the

11

CBA defines the scope of the agreement by outlining the contours of the Union's bargaining unit. (*Id.* at 3). An interpretation of "all employees" that would include non-Union members would have other broad implications for the remainder of the CBA and Defendant contends that allowing such an interpretation would be "absurd." (*Id.* at 3–4). Third, Tamarack argues that the purported ambiguity created by the reference to a non-existent plan in Section 19.1 is a non-issue. Because the grievance mentions the actual plan, Tamarack argues that the Union understands the meaning of this phrase and so there is no actual ambiguity despite the reference to the "Kroger Employees Retirement Benefit Plan." (*Id.* at 4–5).

### 2. Plaintiff's Motion for Summary Judgment

The Union also moves for summary judgment in its favor, arguing that the Defendant was required to arbitrate the February 2018 grievance. In support of its Motion, the Union raises two arguments concerning the presumption of arbitrability. First, the Union notes that the grievance has not been expressly excluded from arbitration and that the requisite evidence of the parties' intent to exclude is not present here. (ECF No. 22 at 1–2). Specifically, the Union argues that the Sixth Circuit requires "the most forceful evidence" to overcome the presumption of arbitrability and such evidence is not present here. (*Id.*). Second, the Union contends that retirement benefits are covered by the CBA and that it is the role of the arbitrator, not this Court, to determine the relevance of past practices in interpreting and applying the CBA. (*Id.* at 8–9).

In its Response, Tamarack raises three arguments against the Union's Motion. First, Tamarack argues that the parties never agreed that the underlying dispute would be subject to arbitration. (ECF No. 26 at 4). Tamarack construes the definition of grievance as "narrow" and that this grievance does not require arbitration. (*Id.*). Because the Union's retirement benefits did not change, Tamarack argues that is in compliance with the CBA. (*Id.*). Second, Defendant

12

maintains that any resolution of asserted distributions or payment rights are governed by benefit plan documents where a CBA states as much. (*Id.* at 6). In support of this proposition, Tamarack relies on *Teamsters Local Union No. 783 v. Anheuser-Busch, Inc.*, 626 F.3d 256, 260–65 (6th Cir. 2010). Third, Defendant argues that any oral representations or promises allegedly made to Union representatives cannot alter the "clear, unambiguous terms" of the CBA. (*Id.* at 7).

The Union disputes each of the three arguments raised by the Defendant. The Union argues first that "[r]esolution of the underlying retirement and pension issues requires both interpretation and application" of the terms of the CBA, which falls squarely within the arbitration clause of the CBA. (ECF No. 29 at 1–2). The Union next contends that *Anheuser-Busch* is not applicable to the dispute here because there is a latent ambiguity creates by the CBA's reference to a non-existent retirement plan and that the plan documents were not sufficiently incorporated by reference into the CBA. (*Id.* at 2–3). Finally, the Union reiterates that this Court must only consider whether the grievance falls within the arbitration clause of the CBA, not whether the underlying grievance is meritorious. (*Id.* at 3–4).

### 3. Applicability of Article 5 to Union's Grievance

Article 5 of the CBA between the parties defines a grievance as a "dispute between the Employer and employee as to the interpretation or application of any provisions" of the CBA. (ECF 22-2, Ex. A at 5). Grievances are also limited to the "express terms and provisions" of the CBA. (*Id.*). Grievances that cannot be resolved may eventually be referred to arbitration. (*Id.* at 6). Upon referral to arbitration, either side may strike the names of potential arbitrators "until only one person's name remains, who shall be the arbitrator." (*Id.*). The decision of the arbitrator will be final and binding. (*Id.*). The CBA makes clear that the arbitrator may not alter the terms of the

13

CBA. (*Id.*).³ Thus, any dispute that concerns the interpretation or application of any of the express terms and provisions of the CBA may proceed to arbitration. This arbitration clause resembles arbitration clauses that have been previously found to trigger the presumption of arbitrability because they broadly provided for arbitration of disputes involving the interpretation or application of a CBA. *See ISP Chems.*, 261 F. App'x at 843, 845 (applying presumption to clause covering "any difference of opinion or dispute . . . regarding interpretation or application" of CBA); *Cleveland Elec.*, 440 F.3d at 814 (finding presumption of arbitrability applicable where clause encompassed "any disagreement concerning the interpretation or application" of CBA); *Commonwealth Aluminum Corp.*, 162 F.3d at 448–49 (applying presumption to clause covering "matters involving the interpretation and application of all provisions of this Agreement"). Article 5 of the CBA here does not differ substantially in either letter or spirit from these arbitration clauses. The presumption of arbitrability is thus applicable here.

Section 19.1 of the CBA concerns retirement benefits. (*Id.* at 19). This section explains that employees "will be covered by and participate in the Kroger Employees Retirement Benefit Plan." (*Id.*). In Mr. Laymon's February 20, 2018 grievance, he begins with a reference to Section 19.1 of the CBA, which is an "express provision" of the CBA. (ECF No. 22-2, Ex. B). The substance of Mr. Laymon's grievance concerns payment options under the retirement plan to union employees. (*Id.*). After the grievance was filed, the Union and Tamarack processed the grievance in accordance with the procedures in Article 5 and also engaged in mediation concerning the grievance. (ECF No. 22-2, ¶¶ 8–9). After several months, the Union then indicated to Tamarack that it wished to

---

³ An arbitrator does not alter an agreement by engaging in methods of contractual interpretation, including reference to past practices when resolving latent ambiguities in agreement: she merely interprets the agreement. *See, e.g.*, *Truck Drivers Local No. 164 v. Allied Waste Sys., Inc.*, 512 F.3d 211, 217 (6th Cir. 2008) ("An arbitrator does not exceed his authority every time he makes an interpretive error; he exceeds that authority only when the collective bargaining agreement does not commit the dispute to arbitration." (quoting *Mich. Family Resources, Inc. v. Serv. Emps. Int'l Union Local 517M*, 475 F.3d 746, 756 (6th Cir. 2007)).

proceed to arbitration. (*Id.* ¶ 11). At this stage, the Defendant indicated to Plaintiff's counsel that the Defendant took the position that the grievance was not arbitrable. (ECF No. 22-2, Ex. C). The heart of Mr. Laymon's grievance, however, directly concerns the "interpretation and application" of one of the express provisions of the CBA: Section 19.1. The grievance thus falls within the substantive scope of Article 5 of the CBA and can be assumed arbitrable.

Neither of the exceptions which may overcome the presumption of arbitrability is applicable here. Defendant argues that, because it is still providing the same benefits to the Union, there is no implication of an express provision of the CBA.[4] An explicit reference to a certain retirement plan in Section 19.1, however, does not constitute an express exclusion from arbitration of any other disputes related to retirement benefits. The terms of the CBA do not expressly exclude disputes about retirement benefits from arbitration. *See, e.g.*, *Cleveland Elec.*, 440 F.3d at 814–15 (finding nothing in CBA expressly excluded retiree benefits from arbitration, even where retirees were not part of the CBA bargaining unit). While not binding, this Court finds the Seventh Circuit's decision in *Karl Schmidt Unisia, Inc. v. United Automobile Workers of America, UAW Local 2357*, 909 F.3d 909 (7th Cir. 2010), to be particularly persuasive in addressing Defendant's argument. In *Karl Schmidt Unisia*, the Company argued that a matter was expressly excluded from arbitration because the CBA did not "specifically address whether an employee may be laid off" when meeting certain requirements and so the Union had not shown a violation of any "express

---

[4] The Defendant also argues that, to the extent that the Union makes a claim that "Kroger failed to provide Union employees a particular distribution or payment right under the applicable plan," the Union must direct its concerns to the Plan's review committee, not arbitration. (ECF No. 28 at 6). In support of this assertion, Tamarack cites to *Teamsters Local Union No. 783 v. Anheuser-Busch, Inc.*, 626 F.3d 256 (6th Cir. 2010). In *Anheuser-Busch*, a single employee challenged his specific entitlement to retirement benefits based on his seniority and history of employment with the company. 626 F.3d at 259. The Union sought "a determination of rights under the Pension Plan documents," but the Sixth Circuit found that the CBA "explicitly provides an alternate procedural framework for resolving disputes." *Id.* at 262. That case is not analogous to the case *sub judice*. *Anheuser-Busch* concerned a single employee's claims regarding a pension plan under which he sought benefits. The Union here has filed a grievance concerning the spinning off of Union employees into a separate plan from other employees, who were then provided distribution rights unavailable to the Union.

15

provision," which was a prerequisite for a grievance to fall within the CBA. 638 F.3d at 913. The Seventh Circuit held that the "mere failure to address a type of dispute is not necessarily an express exclusion" of that type of dispute, even where the CBA's arbitration clause was limited to violations of express provisions of the CBA, as is the CBA here. *Id.* To read a CBA's arbitration clause as such would render the "interpretative domain" of the arbitrator to a "null set" of disputes "for which a plain reading of the CBA clearly determines the outcome." *Id.* Tamarack's argument is similarly unavailing and does not show an express exclusion of this dispute from arbitration.

Nor has "the most forceful evidence of a purpose to exclude the claim from arbitration" been presented by Defendant. Tamarack's counterarguments primarily bear on the merits of the grievance, namely how the CBA should be interpreted. Tamarack argues that the CBA's reference to a specific plan in Section 19.1, coupled with the fact that the Union has historically understood what plan was being referenced, takes this grievance outside the scope of the CBA. In response to these arguments, the Union counters that past practices are relevant and necessary to the interpretation of Section 19.1 and the spin-off plan grievance. Tamarack's argument does not constitute the "most forceful evidence" of an intent to exclude the grievance from arbitration, but instead goes to the merits of *how* Section 19.1 should be interpreted. This Court notes that both federal courts and arbitrators have relied on past practices to interpret collective bargaining agreements. Where a CBA was silent as to cost of living payment increases for union employees, the Sixth Circuit found that the arbitrator who considered past practices of the employer "did what all adjudicators do under the circumstances[:] looked for other indicators of meaning." *Mich. Family Res., Inc. v. Serv. Emps. Int'l Union Local 517M*, 475 F.3d 746, 755 (6th Cir. 2007); *see also Titan Tire Corp. v. United Steelworkers of Am.*, 656 F.3d 368, 373–74 (6th Cir. 2011) (affirming decision of arbitrator who considered evidence of past practices and bargaining between

16

the parties). Whether and to what extent past practices are ultimately relevant to the interpretation of the Section 19.1 is the province of the arbitrator, not this Court.

This Court's decision does not reach the merits of the underlying dispute and only finds that the underlying dispute falls within the substantive scope of the CBA. The CBA contains a provision concerning retirement benefits and a dispute over the interpretation and application of that provision is squarely within the scope of the arbitration clause of the agreement. This Court finds no express exclusion of the dispute within the four corners of the CBA. Nor does this Court find that there is "the most forceful evidence" of an intent to exclude disputes about retirement benefits from the arbitration process. The presumption of arbitrability is particularly applicable to the dispute at hand, and under the CBA this dispute can proceed to arbitration for a resolution on the merits.

### C.     Attorney Fees

The Union also seeks the award of attorney fees under Section 301 of the LMRA. The LMRA does not authorize an award of attorney fees, but a fee award may be permissible where "a party pursues or defends a lawsuit in bad faith or without justification." *Knollwood Cemetery Ass'n v. United Steelworkers of Am.*, 789 F.2d 367, 369 (6th Cir. 1986). Where a party pursues or defends a lawsuit with "some authority" and no other evidence of bad faith has been presented, a court may decline to award attorney fees on the grounds that the suit was not maintained "entirely" in bad faith. *Id.* at 369–70; *see also Quaker Oats Co. v. Int'l Chem. Workers Union*, 986 F.2d 1422, *3 (6th Cir. 1993) (table decision) (finding attorney fees improper where facts could give rise to more than one interpretation). Recovery of attorney fees is also permitted "where necessary to further the interests of justice." *Summit Valley Indus., Inc. v. Local 112, United Brotherhood of Carpenters & Joiners of Am.*, 457 U.S. 717, 721 (1982). If a party has maintained a meritless claim or defense,

17

however, a court may impose reasonable attorney fees upon a finding of bad faith. *Aircraft Braking Sys. Corp. v. United Auto. Workers of Am., UAW*, No. 5:94 CV 0496, 1995 WL 688291, at *12 (N.D. Ohio June 15, 1995), *aff'd*, *Local 856, United Auto. Workers, UAW*, 97 F.3d 155 (6th Cir. 1996).

The Union argues that it is entitled to attorney fees because it had to expend resources to compel Tamarack to arbitrate a dispute between the parties that falls within the CBA. (ECF No. 22 at 10). The Union also contends that because Tamarack's willful breach of contractual obligations by refusal to arbitrate the grievance gave rise to a federal lawsuit, it is entitled to recoup the expenses that it has incurred to compel arbitration. (*Id.*). In response, Tamarack characterizes the request for fees as "baseless" because it has not taken its position in the case in bad faith. (ECF No. 26 at 8). Tamarack also suggests that it may be entitled to fees based on the Union's conduct in this matter. (*Id.*). In its Reply, the Union reiterates that it has incurred significant expenses in its effort to compel arbitration under the terms of the CBA and to secure the Union's contractual rights. (ECF No. 29 at 5).

Neither a showing of bad faith nor the interests of justice compel an award of fees in this matter. While Tamarack's refusal to arbitrate the grievance led to the filing of this action and the expenditure of Union resources, Tamarack's litigation of its claims before this Court bespeaks no bad faith. *See Monroe Auto Equipment Co. v. United Auto. Workers of Am.*, 981 F.2d 261, 270 (6th Cir. 1992) (finding no bad faith where suit was brought "to win" rather than to harass). While *Summit Valley* allows a court to use its equitable powers to award fees "where necessary to further the interests of justice," neither party has set forth substantial reasons to show that an award of fees in its favor would be necessary to further the interests of justice. *See, e.g.*, *P.H. Glatfelter Co. v. United Steel Workers Int'l Union*, No. 2:11-CV-741, 2012 WL 3600180, at *6 (S.D. Ohio Aug.

21, 2012) (finding exercise of discretion to award fees "inappropriate" where neither party "made a substantial attempt to justify its claim for fees"). Accordingly, Plaintiff's Motion for Summary Judgment is **DENIED IN PART** to the extent it requests the award of attorney fees.

### IV.     CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment (ECF No. 21) is **DENIED** and Plaintiff's Motion for Summary Judgment (ECF No. 22) is **GRANTED**, but Plaintiff's request for attorney fees contained in the Motion is **DENIED**.  This case is hereby **DISMISSED.**

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATE:  February 9, 2021**